Filed 3/30/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PODIATRIC MEDICAL BOARD OF CALIFORNIA,<br><br>      Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO,<br><br>      Respondent;<br><br>PETER REDKO,<br><br>      Real Party in Interest. | A155260<br><br>(San Francisco County Super. Ct. No. CPF-18-516147) |

During the course of a disciplinary proceeding against Dr. Peter Redko, the Podiatric Medical Board of California[1] asked an administrative law judge (ALJ) to exclude the testimony of Dr. Redko's designated expert witness because the expert had declined to comply with a discovery request made by the Board in a subpoena duces tecum. The Board's request was granted and the expert was barred from testifying at the subsequent hearing. The accusation against Dr. Redko was sustained, and he was placed on probation.

---

[1] All administrative proceedings were conducted before what was then called the California Board of Podiatric Medicine. During the pendency of this appeal, it was renamed the Podiatric Medical Board of California. (Stats. 2018, ch. 102, § 1, amending Bus. & Prof. Code, § 2460, subd. (a).) For obvious purposes of clarity and simplicity, it will hereafter be referred to simply as "the Board."

1

Dr. Redko petitioned for a writ of administrative mandate, which the trial court granted because the provisions in the Administrative Procedure Act (APA) governing contested adjudicatory hearings (Gov. Code, § 11400 et seq.) do not expressly provide for imposition of witness exclusion as a discovery sanction.

The Board argues that the power to exclude testimony to counter discovery "abuse" should be recognized as an implied power of an ALJ's statutory authority under the APA to "exercise all powers relating to the conduct of the hearing," which includes ruling "on the admission and exclusion of evidence." (Gov. Code, § 11512, subd. (b).)

The ruling to exclude Dr. Redko's expert was made prior to the hearing by the presiding ALJ, not the ALJ who actually conducted the hearing. Thus, witness preclusion at issue here cannot be recognized as an implied power "relating to the conduct of the hearing." The Legislature has provided other mechanisms in the APA for resolving discovery disputes, mechanisms the Board did not use to enforce compliance with its subpoena. Finally, because the Legislature knows how to draft statutes that authorize witness preclusion as a sanction for misuse of the discovery process in administrative proceedings, the absence of such a power in the APA cannot be deemed inadvertent. For these reasons, we will not overturn the trial court's decision.

## BACKGROUND

The Board licensed Peter Redko as a doctor of podiatric medicine in 2003. In April of 2017, the Board filed an accusation seeking to have him disciplined for two "causes": (1) "Unprofessional Conduct," particularized as "gross negligence and/or repeated negligent acts based on the care provided to Patient MS" and (2) "Inadequate Medical Record Keeping." In accordance

2

with Government Code section 11507.6, the Board asked Dr. Redko to identify those witnesses he "intended to . . . call . . . to testify at the hearing," and to produce various statements, investigative reports, and "[a]ny other writing or thing which is relevant and which would be admissible in evidence . . . pertaining to the persons named in the [accusation]."

An ALJ conducted a prehearing conference to settle on various aspects of the actual hearing. In the order memorializing those matters, the ALJ directed "The parties' attention . . . to Business and Professions Code section 2334, concerning the timely disclosure of expert witnesses."

The Board issued a subpoena duces tecum to Dr. Thomas Chang, also a doctor of podiatric medicine, whom Dr. Redko had designated as his expert witness in accordance with Business and Professions Code section 2334.[2] Dr. Redko moved to quash the subpoena.[3] In its opposition, the Board argued that all the grounds for the motion were baseless, and, therefore, "The request to quash the subpoena should be denied, and immediate compliance,

---

[2] The subpoena directed Chang to produce "any and all, including but not limited to, written communications, emails, notes, letters and voice mail messages with [Dr. Redko's] counsel," along with "any and all documents, including but not limited to, journals, articles, notes, records, medical records, x-rays, images, that were reviewed, relied on, or referenced in drafting your written expert opinion."

[3] Dr. Redko's motion was based on three grounds: (1) the documents requested had already been provided; (2) notice to the patient was not provided; and (3) upon receiving the subpoena, Dr. Chang telephoned the Board's attorney "to inquire as to the nature and purpose of the subpoena." The ensuing conversation was interpreted by Dr. Redko's attorney as the Board's attorney "seeking to discover, what, if anything, she could use at the hearing through her request for production of documents," and such "behavior gives rise to the presumption that the Subpoena Duces Tecum was issued in order to circumvent [Dr. Redko's] attorney and create the opportunity for improper ex parte communication with [Dr. Redko's] expert witness."

now overdue, with the subpoena should be ordered.  In the alternative, an order should issue precluding Dr. Chang from testifying or offering expert opinions at the hearing."  As required by regulation (see fn. 6, *post*), the motion was directed to, and denied by, the presiding ALJ.

The day after he filed his motion to quash, Dr. Redko notified the Board that he intended to call two expert witnesses—Dr. Chang, and Dr. Robert D. Teasdale.  The Board promptly moved under Business and Professions Code section 2334 to "exclude expert testimony" by Dr. Teasdale because he had not been disclosed in a timely manner.

Three days later, the Board then moved to exclude Dr. Chang's testimony by reason of his "failure to comply with Duly Issued Subpoena Duces Tecum."  Although Business and Professions Code section 2334 was mentioned in the moving papers, it was not claimed that Dr. Redko or Dr. Chang had failed to provide the information required by that statute.[4]  Nor did the Board cite the statute as authority to exclude Dr. Chang's

---

[4] The information required to be provided to the opposing party is "(1)  A curriculum vitae setting forth the qualifications of the expert.  [¶] (2)  A complete expert witness report, which must include the following:  [¶] (A)  A complete statement of all opinions the expert will express and the bases and reasons for each opinion.  (B)  The facts or data considered by the expert in forming the opinions.  (C)  Any exhibits that will be used to summarize or support the opinions.  [¶] (3)  A representation that the expert has agreed to testify at the hearing.  [¶] (4)  A statement of the expert's hourly and daily fee for providing testimony and for consulting with the party who retained his or her services."  (Bus. & Prof. Code, § 2334, subd. (a).)

The statute begins "with respect to the use of expert testimony by the Medical Board," but it appears it applies equally to the Board by virtue of Business and Professions Code section 2222.  Dr. Redko disputes this.  We need not decide the issue, because, as already established, Dr. Redko did not raise this issue in either the administrative proceeding or the trial court, but accepted that the provisions of Business and Professions Code section 2334 did apply to him.  (See Evid. Code, § 623.)

4

testimony.  In fact, no other statute or authority was cited in the Board's moving papers.  (See Cal. Code Regs., tit. 1, § 1022, subd. (d) ["Motions . . . shall state in plain language the relief sought and the . . . legal authority that support the Motion"].)

Again, both motions were directed to, and ruled upon, by the presiding ALJ.  His decision to exclude Dr. Teasdale was not challenged by Dr. Redko in the trial court.  It is only the other order—made five days before the adjudicatory hearing was scheduled to begin—which is at issue.

As stated in his order excluding Dr, Chang's testimony, the presiding ALJ concluded Dr. Redko's arguments against the validity of the Board's subpoena (see fn. 3, *ante*) were "without any reasonable basis.  Dr. Chang has been designated by [Dr. Redko] as an expert witness in connection with Dr. Redko's treatment of Patient MS.  Communications between Dr. Redko's attorney and Dr. Chang are not the 'personal records' of Dr. Redko's attorney; therefore, as set forth in the . . . Order denying Dr. Redko's motion to quash, no Notice to Consumer directed to Dr. Redko's attorney was required.  Communications between Dr. Redko's attorney and Dr. Chang are relevant to the bases of Dr. Chang's opinion, and they are the proper object of discovery.  [Dr. Redko] has not asserted any reasonable basis for Dr. Chang to refuse to produce those communications.  As Dr. Redko has made it plain that Dr. Chang will not produce the communications sought by the subpoena, the appropriate remedy is to preclude Dr. Chang from testifying."  No statute or authority is mentioned in the order.

Following a three-day evidentiary hearing, the assigned ALJ concluded that both of the "causes" of the accusation were sustained by the Board's evidence.  The ALJ drafted a 23-page proposed decision that was adopted by the Board.  Dr. Redko's license was revoked, but the revocation was stayed,

5

and he was "placed on probation for five years" with specified "terms and conditions."

Dr. Redko moved for reconsideration on various grounds, one of which was that the presiding ALJ "did not have express statutory authority to order an evidentiary sanction . . . for Dr. Chang's failure to comply with a subpoena duces tecum." The motion was denied by operation of law when the Board took no action on it. (See Gov. Code, § 11521, subd. (a); *Ginns v. Savage* (1964) 61 Cal.2d 520, 525 [power to grant reconsideration expires on date decision becomes effective].)

The trial court granted Dr. Redko's petition for a writ of administrative mandate (Code Civ. Proc., § 1094.5) commanding the Board to set aside its decision. The court's reasoning was stated as follows:

"The Board subpoenaed documents from Dr. Redko's sole expert on the standard of care, Dr. Thomas Chang. Disputes abound as to this subpoena duces tecum, but they need not be resolved, because the Board's hearing officer lacked the power to impose the evidentiary sanction in any event.

"As the Board concedes, 'administrative agencies only have the power conferred on them by statute.' The two statutes the Board cites confer no power to impose an evidentiary sanction for discovery misuse, much less by effectively case-dispositive sanction. Government Code [section] 11512[, subdivision] (b) regards review of an administrative law judge's evidentiary rulings; it mentions no evidentiary sanction of any kind. Government Code [section] 11450.20 addresses subpoenas in administrative proceedings, again with no mention of evidentiary sanctions. Nor has either statute ever been construed by an appellate court to empower evidentiary sanctions.

"This is in stark contrast to the powers conferred on California courts. For example, Code of Civil Procedure [section] 2023.030[, subdivision] (c)

6

provides: 'The court may impose an evidence sanction by an order prohibiting any party engaging in the misuses of the discovery process from introducing designated matters in evidence.' (See also *Waicis v. Superior Court* (1990) 226 Cal.App.3d 283, 287 [expert's trial testimony barred].) The California Legislature thus clearly illustrates that it knows how to grant powers to impose evidentiary sanctions when that is what it intends. The Legislature has made no such grant of power to administrative agencies or their hearing officers.

"Because the Board and its hearing officers had no authority to impose the evidentiary sanction barring Dr. Chang from testifying, and because Dr. Chang's testimony is key to the case, petitioner's request for a writ of mandate is GRANTED."

The Board filed a notice of appeal from the ensuing judgment directing issuance of the writ. Questions arose during the course of our initial consideration of the issues presented, for which the parties provided supplemental briefing.

## DISCUSSION

### The Jurisdictional Issue

In his supplemental briefing, Dr. Redko for the first time argues that the Board's appeal is unauthorized. Citing our analysis in *Landau v. Superior Court* (1998) 81 Cal.App.4th 191 (*Landau*), Dr. Redko draws our attention to Business and Professions Code sections 2335 and 2337. The former provides in pertinent part: "If . . . [the Board] does not refer the case back to the [ALJ] for the taking of additional evidence or issue an order of nonadoption within 100 calendar days, the [ALJ's proposed] decision shall be final and subject to review under Section 2337." (Bus. & Prof. Code, § 2335, subd. (c)(3).) The latter states that, with respect to "superior court review of

7

a decision revoking, suspending, or restricting a license," "review of the superior court's decision shall be pursuant to a petition for an extraordinary writ."

In *Landau*, we concluded that the 1995 enactment amending these statutes (Stats. 1995, ch. 708) "eliminated direct appeal via Code of Civil Procedure section 1094.5 from the superior court decision granting or denying the petition for writ of mandate and substituted discretionary writ review by the appellate court." (*Landau, supra*, 81 Cal.App.4th at pp. 188–189.) Thus, Dr. Redko's objection appears well taken.

In response, the Attorney General, representing the Board, suggests that "it is unclear whether Business and Professions Code section 2337 applies to this particular appeal," and asks then we exercise the unusual power to treat the appeal as a petition for an extraordinary writ. Having become familiar with the subject of this appeal, we realize it presents a pure issue of law pertaining to the regulatory power of the Board to protect patient safety and the public health. (Cf. Bus. & Prof. Code, § 2460.1 ["Protection of the public shall be the highest priority for the [Board] in exercising its licensing, regulatory, and disciplinary functions"].) The case has been thoroughly briefed and argued. Both sides were almost equally tardy in raising the issue. (Cf. *Sela v. Medical Bd. of California* (2015) 237 Cal.App.4th 221, 221–232 [issue raised by Court of Appeal].) Accordingly, as was done in *Zabetian v. Medical Bd. of California* (2000) 80 Cal.App.4th 462, we will treat the Board's purported appeal as a petition for a writ of mandate, and proceed to the merits.

## The Parties' Arguments

For Dr. Redko, the case against him must be governed solely by the APA, which has specific procedures addressing the failure to provide

discovery which were not followed here. The Legislature knows how to vest administrative agencies and ALJs with the power to impose discovery abuse sanctions. Because, as the trial court recognized, the APA did not expressly authorize the exclusion of Dr, Chang's testimony, the order of the presiding ALJ preventing Dr. Chang from testifying was in excess of his power and thus void. The Board's decision was properly set aside.

The Board accepts the predicate of Dr. Redko's argument—that we must look primarily to the APA. The Board reiterates that what occurred was justified by the provision in the APA (Gov. Code, § 11512, subd. (b)), which vests the ALJ conducting the hearing with authority to "exercise all powers relating to the conduct of the hearing," including "admitting or excluding evidence." If this be inadequate, the Board asserts that that ALJ ought to be recognized under the same statute as having the implied power to control abuse of the administrative hearing process by imposing the sanction of preventing a witness from testifying: "Although not specially authorized in the Government Code [i.e., the APA], it is within the ALJ's discretion to control the testimony of witnesses," that is, it is "encompassed by the general grant of power under Government Code section 11512, subdivision (b) to 'exercise all powers related to the conduct of the hearing.' "

The Board's fallback argument is that the power to exclude ought to be implied as a common sense necessity.

From the premise that an administrative hearing "has many of the same trappings as a regular civil proceeding" (*Rich Vision Centers, Inc. v. Board of Medical Examiners* (1983) 144 Cal.App.3d 110, 115 (*Rich Vision Centers*)), the Board submits that "[t]hese 'trappings' cannot possibly all be included in statutes, as the Superior Court's order would seemingly have. There are a myriad of judicial tasks ALJs do, on a daily basis in the

9

performance of their duties, to ensure fair administrative hearings that are not specifically spelled out in statute."  "As a matter of common sense, the [APA] cannot detail every step of the hearing process, or every decision an ALJ may be called upon to make over the course of the proceeding."

Because "trial court judges have the discretion to issue evidence preclusion orders" (citing *Peat, Marwick, Mitchell & Co. v. Superior Court* (1988) 200 Cal.App.3d 272, 286–287 ["a California trial court has the inherent power to preclude evidence to cure abuses or overreaching . . . and [does] not need a specific statutory authorization to prevent injustice by excluding certain evidence"]), the Attorney General reasons that it would be anomalous to deny the same power to ALJs, thereby depriving them of a "basic power to ensure that all parties receive a fair trial."

The Attorney General argues that we should accept this implied power of ALJs as analogous to the powers exercised by federal ALJs, and to "the authority of a trial judge to exclude evidence, including expert testimony, to protect the integrity of the process . . . ."  "In exercising this authority, trial courts regularly exercise their basic power to insure that all parties receive a fair trial by precluding evidence."

Following completion of briefing, a different deputy attorney general took over representation of the Board.  During the course of oral argument, it became apparent that many of the arguments being advanced were materially different from those made by the Board's initial counsel in the briefs.  Substitute counsel candidly conceded that certain of his arguments were not made in the trial court.  This manner of presenting arguments is disfavored and generally not allowed.  (E.g., *Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603; *Reales Investment, LLC v. Johnson* (2020) 55 Cal.App.5th 463, 469; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 400, p. 458.)  The

10

rule is based on the principle of fairness—neither the opposing party nor the trial court should be responsible for an issue neither ever considered. As we stated many years ago: "When a question is raised in this manner by an appellant to defeat a judgment there is greater reason why it should be disregarded than when it is raised by the respondent to support the presumption of the validity of the judgment." (*In re Estate of Davis* (1940) 38 Cal.App.2d 579, 597.) We believe it appropriate to apply this principle here. Accordingly, we address only those points brought to the attention of the trial court and advanced in the Board's opening brief.

### Preliminary Comments

As with civil malpractice actions, disciplinary proceedings against a physician or podiatrist for negligence will commonly require consideration of the profession's standard of care, requiring testimony from experts. (See, e.g., *Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 1001 [" ' "The standard of care against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts . . . and can only be proved by their testimony" ' "].) The APA makes special provision for this need with the Medical Quality Hearing Panel, which is comprised of ALJs who have medical training. (See Gov. Code, §§ 11371-11373; Bus. & Prof. Code, § 2335, subd. (a).) But the APA is not the entire statutory universe. Almost but not entirely, for it is a provision in the Business and Professions Code that governs disclosure of experts expected to testify.

Business and Professions Code section 2334 provides that "no expert testimony shall be permitted" unless specified information is exchanged 30 days prior to the scheduled start of the hearing. It was made clear to the parties from the start that the requirements of this statute applied and would

11

be enforced, which it was, with the exclusion of Dr. Teasdale, a ruling neither party contested in the trial court.  The Board's disclosure of its expert, Dr. Mednick, provided the information specified, as well as noting it was per "Bus. & Prof. Code, § 2334."  Dr. Redko made the required disclosure for Dr. Chang (including an attached copy of "Dr. Chang's report"), which was never challenged by the Board as either untimely or inadequate.  Counsel for the Board re-affirmed at oral argument there is no claim that the information required of Dr. Chang by that statute was not provided.

A point of terminology is crucial and must be constantly kept in mind. When we refer to "an ALJ" or "the ALJ," we will mean the person who actually conducts the adjudicatory hearing, hears witnesses and received evidence, and who prepares findings, conclusions, and a recommended disposition for the Board.  As will be seen, this individual is commonly designated in statutes as "the presiding officer."  However, when we refer to "the presiding ALJ," we do *not* mean the ALJ who presides at the adjudicatory hearing.  "Presiding ALJ," which is not a statutory term, is the individual who is an ALJ but who "presides" over the internal operations of the regional office of administrative hearings.  The duties of a presiding ALJ resemble those of an executive office manager.[5]

_____

[5] The job description for the presiding ALJ is that he or she "supervises [ALJs] and support staff in one of the regional offices of the Office of Administrative Hearings (OAH); participates in policy decisions as a member of an office management team; performs various administrative tasks associated with case management"; "assigns cases to ALJs and oversees case calendar for the regional office"; "handles continuance requests and other procedural issues relating to cases"; "and as administrative responsibilities permit, hears and decides cases . . . including those which are most complex or sensitive."  (Presiding Administrative Law Judge, Office of Administrative Hearings, Cal. State Personnel Bd. Specification, <https://www.calhr.ca.gov/state-hr-professionals/Pages/6133.aspx> [as of Mar. 30, 2021].)  By regulation, the presiding ALJ is to decide all motions

12

## The Merits

The language invoked in the trial court's decision, that " 'administrative agencies only have the power conferred on them by statute,' " is no mere maxim, but a bedrock doctrine. The classic formulation was by Justice Sullivan: "It is settled principle that administrative agencies have only such powers as have been conferred upon them, expressly or by implication. [Citations.] An administrative agency, therefore, must act within the powers conferred upon by law and may not validly act in excess of such powers." (*Ferdig v. State Personnel Bd.* (1969) 71 Cal.2d 96, 103–104.)

However, the word "implication" suggests that the doctrine is not without a measure of flexibility. Our Supreme Court has also stated: "It is well settled in this state that governmental officials may exercise such additional powers as are necessary for the due and efficient administration of powers expressly granted by statute, or as *may fairly be implied* from the statute granting the powers."[6] (*Dickey v. Raisin Proration Zone No. 1* (1944) 24 Cal.2d 796, 810.)

The APA has provisions addressing discovery prior to the adjudicatory hearing conducted by an ALJ. They begin with the broad statement that "The provisions of Section 11507.6 provide the exclusive right to and method

---

prior to the adjudicatory hearing. (Cal. Code Regs., tit. 1, § 1022, subd. (a) ["Motions made prior to the Hearing shall be directed to the presiding judge. Thereafter, Motions shall be directed to the ALJ assigned to the Hearing"].)

[6] Although this language did not expressly include administrative agencies, this court and others have so extended it. (E.g., *Leslie Salt Co. v. San Francisco Bay Conservation etc. Com.* (1984) 153 Cal.App.3d 605. 617; *Duarte & Witting, Inc. v. New Motor Vehicle Bd.* (2002) 104 Cal,.App.4th 626 636; *Rich Vision Centers, supra*, 144 Cal.App.3d at p, 114.)

13

of discovery as to any proceeding governed by this chapter."[7] (Gov. Code, § 11507.5.) The referenced section specifies the scope of discovery, including "statements," "writings," and "reports." It declares that each party "is entitled to (1) obtain the names and addresses of witnesses . . . including . . . those intended to be called to testify at the hearing, and (2) inspect and make copy of any" of various specified "statements," "writings," and "investigative reports." Among the "statements" to be made available to the other party are "[s]tatements of witnesses . . . proposed to be called by the party." (Gov. Code, § 11507.6, subd. (c).)

These documents may be obtained by a subpoena duces tecum. (See Gov. Code, §§ 11450.05, 11450.10, 11450.20; Cal. Code Regs., tit. 1, § 1024, subd. (a).) The recipient may, as Dr. Redko did, "object to its terms by . . . a motion to quash," or "a motion for a protective order." (Gov. Code, § 11450.30, subd. (a).)

The APA has three enforcement mechanisms if requested discovery is denied.

First, "Any party claiming the [other] party's request for discovery pursuant to Section 11507.6 has not been complied with may serve and file with the [ALJ] a motion to compel discovery[.]" (Gov. Code, § 11507.7, subd. (a).) "Where the matter sought to be discovered is under the custody or control of the respondent party and the respondent party asserts that the matter is not a discoverable matter under the provisions of Section 11507.6 or

_____

[7] This exclusivity comes with a caveat. Dr. Redko apparently believes that, with the exception of Business and Professions Code section 2334, everything needed to conduct an adjudicative hearing is to be found in the APA. This is certainly not true with respect to discovery. A leading treatise has two pages listing "discovery provisions outside [the] APA." (Asimow et al., Cal. Practice Guide: Administrative Law (The Rutter Group 2019) ¶ 7:160, pp. 7-30 to 7-31.)

is privileged against disclosure [one of the grounds asserted by Dr. Redko] under those provisions, the [ALJ] may order lodged with it matters provided in subdivision (b) of Section 915 of the Evidence Code and examine the matters in accordance with its provisions." (*Id.*, subd. (d).)

Second, the party denied proper discovery may also apply to the "presiding officer" for monetary sanctions to compensate "reasonable expenses, including attorney's fees, incurred . . . as a result of bad faith actions or tactics that are frivolous . . . as defined in Section 128.5 of the Code of Civil Procedure." (Gov. Code, § 11455.30, subd. (a); see Cal. Code Regs., tit. 1, § 1040.)

Third, there is "the contempt sanction" for specified acts or omissions, including "[d]isobedience of or resistance to a lawful order," "unlawful interference with the process or proceedings of the agency," and "[f]ailure or refusal, without substantial justification, to comply with a deposition order, discovery request, subpoena, or other order of the presiding officer[.]" (Gov. Code, § 11455.10, subds. (a), (c), (e).) The process begins with the "presiding officer or agency head" certifying "the facts that justify the contempt sanction against a person in the superior court in and for the county where the proceeding is conducted." (Gov. Code, § 11455.20, subd. (a).) "Upon service of the order and a copy of the certified statement, the court has jurisdiction of the matter" (*ibid.*), where "[t]he same proceedings shall be had, the same penalties may be imposed,[8] and the person charged may purge the contempt . . . ." (*Id.*, subd. (b).)

The trial court concluded witness exclusion as a discovery sanction could not be recognized in the absence of an authorizing provision in the

---

[8] The penalties for a civil contempt are a fine of up to $1,000, imprisonment for up to five days, or both. (Code Civ. Proc., § 1218, subd. (a).)

APA. The Board decries the trial court's reasoning as "narrow" and "extremely hyper-technical." It urges us in the name of common sense to accept that the APA "cannot detail every step of the hearing process, or every decision an ALJ may be called upon to make over the course of the proceeding." This is undoubtedly sensible as a general proposition, but it ignores an unusual factor, thus resulting in a mischaracterization of what actually occurred here.

The Board's resort to the language of Government Code section 11512 concerning an ALJ's authority to "exercise all powers relating to the conduct of the hearing," which includes ruling "on the admission and exclusion of evidence," is unavailing. The language is clearly meant to cover the actual conduct of an adjudicative hearing that is already under way before an ALJ.[9] What happened here was nothing like that, but more in the nature of a

---

[9] "(a) Every hearing in a contested case shall be presided over by an administrative law judge. . . .

"(b) When the agency itself hears the case, *the administrative law judge shall preside at the hearing*, rule on the admission and exclusion of evidence and advise the agency on matters of law; the agency itself shall exercise all other powers relating to the conduct of the hearing but may delegate any or all of them to the administrative law judge. *When the administrative law judge alone hears a case, he or she shall exercise all powers relating to the conduct of the hearing. . . .* [¶] . . . [¶]

"(d) The proceedings *at the hearing* shall be reported by a stenographic reporter. However, upon the consent of all the parties, the proceedings may be reported electronically." (Gov. Code, § 11512, italics added.)

In 1958, this court noted that "hearing" in this context means proceedings where evidence is taken or questions of law presented. (*Yanke v. State Dept. Public Health* (1958) 162 Cal.App.2d 600, 603.) The term does not encompass "the entire adjudicative process." (*Cameron v. Cozens* (1973) 30 Cal.App.3d 887, 890.) "Hearing," therefore, would not necessarily reach the *pre*-hearing ruling made by the presiding ALJ, as the Board clearly assumes.

16

motion in limine made, not to the ALJ who would conduct the hearing, but to the presiding ALJ.  In these circumstances, the presiding ALJ's ruling prior to the start of the actual adjudicative hearing cannot be brought within the plain language of Government Code section 11512. [10]

According to the strict language of the APA statutes, the discovery related disputes prior to the actual adjudicative hearing are to be decided either by "the presiding officer" (Gov. Code, §§ 11450.30, 11507.7), or "the administrative law judge" (Gov. Code, § 11507.7).  Ordinarily the two would be deemed synonymous because "presiding officer" is statutorily defined as "the . . . administrative law judge . . . who presides in an adjudicative proceeding."  (Gov. Code, § 11405.80.)  Obviously, the literal import of this

---

[10] A leading practice guide states:  "If a party refuses to comply with a subpoena duces tecum for information related to the anticipated testimony of that witness, the ALJ has inherent authority as the hearing officer to grant the opposing party's motion to exclude testimony by that witness.  Govt C § 11512(b) (authorizing ALJ to 'exercise all powers relating to the conduct of the hearing').  See Govt C § 11450.30(b) (permitting ALJ to resolve objections to subpoenas).  Exclusion of witness testimony is a more common remedy for a party's disobedience of a subpoena duces tecum than imposition of contempt or monetary sanctions."  (Cal. Administrative Hearing Practice (Cont.Ed.Bar 2019) § 5.29A, p. 5-18; see also *id*., § 5.13, p. 5-10 ["the remedy for refusal of discovery is a motion to compel discovery filed with the ALJ.  Govt C § 11507.7.  The remedy for refusal to obey the ALJ's order is a motion for sanctions in front of the ALJ or a request that the ALJ certify the matter to the superior court.  A motion to exclude witness proffered by a noncompliant party is another more common remedy . . . see § 5.29A"].)  The language used in these excerpts, and their positioning (the preceding sections are "The Hearing" (*id*., § 5.28) and "[The] ALJ's Decision" (*id*., § 5.29)), clearly indicate that they are addressed to the ALJ who is actually going to preside at the adjudicative hearing.  As already indicated, we are considering the exclusionary power exercised in the very different context of a pre-hearing dispute.  The nature and extent of the powers under Government Code section 11512 of an ALJ actually conducting an adjudicative hearing are not before us, and we express no opinion on them.

17

language might prove impractical because no decision could be taken until the ALJ had commenced the adjudicatory hearing. Everyday reality may require an earlier decision. A dispute can arise before a specialized ALJ from the Medical Quality Hearing Panel has been assigned. Common sense may require that some decisions have to be made by someone other than the "presiding officer." Submitting pre-hearing disputes to the presiding ALJ may not be expressly and affirmatively codified in the APA, but it is an eminently sensible pendente lite mechanism and is covered by regulation. (Cal. Code Regs., tit. 1, § 1040, quoted at fn. 6, *ante*.) Neither Dr. Redko nor the Board suggest that discovery disputes are excluded.

As to such disputes, the APA is very clear about the remedies available. The Board could have made a motion to compel discovery. Or the Board could have argued that because Dr. Redko's objections to the Board's subpoena had already been rejected, his continued refusal to comply with the subpoena was in bad faith, thus warranting a monetary sanction. Or the Board could have asked to have the process of the contempt sanction commenced. The Board elected to ignore these remedies. Instead, it went to the presiding ALJ with the motion asking for a sanction that is not statutorily authorized.

The question then shifts to whether the power to exclude testimony as a discovery sanction should be recognized as an implied power of the adjudicative agency or ALJ? We think not.

Implied powers are recognized only when there is no precise statute covering the point. For example, in *Rich Vision Centers*, *supra*, 144 Cal.App.3d 110, there was no statute specifically authorizing the regulatory agency the power to negotiate a settlement of pending disciplinary actions or impose conditions to that settlement. The Court of Appeal, however, held

18

that the power to settle disputes was implicit in, and consistent with, the statutory scheme giving the agency the responsibility for the issuance, renewal, or revocation of a license to practice:  "Permitting the Board to settle disputes over present or continuing fitness for a license helps to achieve the Legislature's purpose.  Settlement negotiations provide the Board greater flexibility.  Importantly, settlements provide the means to condition the issuance or renewal of licenses in order best to protect the public.  Licensing can be tailored to suit the particular situation."  (*Id*. at p. 115.)

The situation here is entirely different.  The subject is discovery and the resolution of discovery disputes.  As already shown, the APA is not silent on either.  As already mentioned, the APA has explicit language that its statutes "provide *the exclusive right to and method of discovery* as to any proceeding governed by this chapter."  (Gov. Code, § 11507.5, italics added, referring to Gov. Code, § 11507.6.)  The italicized language encompasses sanctions for failing to make discovery.  This language cannot be construed as other than a prohibition of extra-statutory augmentation.  In these circumstances, we cannot imply the power the Board desires, particularly when there are statutory remedies that were not tried and found wanting.

Another reason for not implying an additional discovery sanction is that there is a considerable basis for concluding the Legislature does not want the Board to have it.

The trial court noted the provision in the Code of Civil Procedure authorizing exclusion of a witness's testimony from a civil trial.[11]  The

---

[11] The trial court's reference is instructive for a different, but highly, relevant point.  Civil litigation discovery sanctions are to be applied incrementally, increasing in severity only as needed to ensure compliance with an existing order for discovery.  (E.g., *J.W. v. Watchtower Bible & Tract Society of New York, Inc*. (2018) 29 Cal.App.5th 1142, 1169; *Doppes v. Bentley*

language of Business and Professions Code section 2334 provides another example, but applied to administrative proceedings.  Dr. Redko's counsel points to other examples where the Legislature has authorized or delegated the power to resolve and sanctions to administrative officials or agencies. (See Veh. Code, § 3050.2, subd. (b) ["Compliance with discovery procedures . . . may be enforced by application to the executive director" of the New Motor Vehicle Board]; Lab. Code, § 148.7 [authorizing Occupational Safety and Health Appeals Board to adopt "rules of practice and procedure"]; Cal. Code Regs., tit. 8, § 372.7 ["The [ALJ] or the Appeals Board may impose sanctions on a party who fails to respond to an authorized request for discovery" including "prohibiting the introduction of designated matters into evidence by the abusing party" and "any other order as the [ALJ] or the Appeals Board may deem appropriate under the circumstances"].)  There are others.  (See Rules of Com. on Jud. Performance, rule 122(h) ["If any party fails to comply with a discovery request as authorized by these procedures, the items withheld shall be suppressed"]; Rules Proc. of State Bar, rule 5.65(H)(1) ["If any party fails to comply with a discovery request," the State Bar Court "may admit the items withheld" or, if the items have been "admitted into evidence, may be ordered stricken from the record"].)

Indeed, one of the statutes governing how the Board handles complaints against a person licensed by the Board has a limited evidence exclusion provision:  "Complainants against licensees of the board . . . [¶] . . . shall be given an opportunity to provide a statement to the deputy attorney general from the Health Quality Enforcement Section who is assigned the case.  These statements *shall not be considered . . . for purposes of*

---

*Motors, Inc.* (2009) 174 Cal.App.4th 967, 992.)  That is clearly not what happened here, where less drastic sanctions were never tried.

20

*adjudicating the case* to which statement pertains, but may be considered . . . after the case is finally adjudicated for purposes if setting generally applicable policies and standards." (Bus. & Prof. Code, § 2330, italics added.)

It is thus clear beyond reasonable doubt that the Legislature knows how to enact statutes with specified consequences—including complete witness exclusion—for discovery related disputes in differing settings. To find authorization for that sanction, whether in Government Code section 11512 in particular or the APA as a whole, would transgress a cardinal rule of statutory construction, that it is not a judicial function to read into statutes language the Legislature might have used or might have intended. (See, e.g., Code Civ. Proc., § 1858; *Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 73–74; *Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 993.) In other words, courts do not rewrite statutes.

The Board's other points involving analogies require only brief discussion.

Citing *Lucia v. Securities & Exchange Com.* (2019) ___ U.S. ___ [138 S.Ct. 2044], the Board urges this court to accept the analogy to ALJs in the federal system. Apart from the obvious distinction that federal ALJs operate under different statutory schemes, the analogy is unjustifiable because the scheme at issue in *Lucia* appears to vest the hearing officer with the statutory power to impose discovery sanctions (see *Lucia*, at p. 2049 ["An ALJ assigned to hear an SEC enforcement action has extensive powers" which include "supervising discovery . . . and imposing sanctions for '[c]ontemptuous conduct' or violations of procedural requirements"]), which in any event were not at issue in that decision; the sole question considered was "whether the Commission's ALJs are "Officers of the United States" or simply employees of the Federal Government." (*Id*. at p. 2051.)

21

Analyzing to the superior court fares no better.  It is almost enough to note the world of difference between them.  The superior court is a constitutional office (Cal. Const., art. VI, § 4), and by reason of that status possesses " 'all the inherent and implied powers necessary to properly and effectively function as a separate department in the scheme of our state government.' "  (*Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 58, quoting *Brydonjack v. State Bar* (1929) 208 Cal. 439, 442.)  It exercises an almost unlimited jurisdiction of law and equity.  By contrast, the Board is purely a creature of statute, its authority extending only to a single profession.

Moreover, our Supreme Court appears to have a very jaundiced opinion of attempts to blur the distinctions between judges and administrative hearing officers.  (See *American Federation of Labor v. Unemployment Ins. Appeals Bd.* (1996) 13 Cal.4th 1017, 1023 ["we abide by the settled principle that administrative law judges, like the agencies authorized to appoint them, may not act as superior court judges, and in excess of their statutory powers"]; cf. *Mileikowsky v. West Hills Hospital & Medical Center* (2009) 45 Cal.4th 1259 [physician peer review panel hearing officer lacked statutory authority to dismiss proceeding for failure to respond to discovery request; disapproving *Mileikowsky Tenet Healthsystem* (2005) 128 Cal.App.4th 531, where Court of Appeal upheld hearing officer dismissal in another peer panel review for refusal to produce discovery]; see also *Mileikowsky, supra,* 45 Cal.4th at p. 1278 (dis. opn. of Kennard, J.) ["To not allow a hearing officer presiding over a peer review proceeding to impose a termination sanction for a party's egregious abuse of the discovery process would undermine the hearing officer's ability to control recalcitrant parties and curb flagrant abuse of the statutory discovery process. . . .  Just as a court has the power to order

dismissal as a sanction for egregious abuse of the discovery process [citation], so too should a hearing officer presiding over a peer review proceeding have the power to impose a termination sanction"].)

The Board argues that this case shows how strict construction will lead to chaos. This fear is overblown. The APA is not at war with common sense. As with civil discovery, the APA's statutes provide for graduated sanctions. In civil discovery, discovery abuse, even if egregious, does not justify imposition of nonstatutory sanctions in the absence of violation of court order compelling response. (See, e.g., *New Albertsons, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1403, 1428; *Trail v. Cornwell* (1984) 161 Cal.App.3d 477, 488.) Here, there was no order directing Dr. Redko to furnish the materials covered by the Board's subpoena (see fn. 2 and accompanying text, *ante*). Nonstatutory remedies cannot supplant statutory measures—available to both sides—which have not been tried and found wanting. In these circumstances, we will not leapfrog the APA's existing scheme of discovery remedies.

There may well be a sound policy argument to be made for vesting presiding ALJs with some wider authority to resolve discovery disputes prior to the commencement of the adjudicative hearing. The obvious point of comparison is with civil litigation, where discovery are usually resolved before trial. It is not hard to imagine how an adjudicatory hearing could be disrupted and thrown into turmoil if the assigned ALJ was suddenly confronted with making a major decision based on a discovery dispute which the ALJ had no inkling even existed. Smooth and efficient conduct of hearings would not result if the ALJ is forced to unravel and resolve issues collateral to the scheduled topic of the hearing. If the powers currently provided by the Legislature are inadequate to the task, it is up to the

Legislature to augment those powers. The want cannot be supplied by courts recognizing an implied power the Legislature appears to have consciously withheld.

## CONCLUSION AND DISPOSITION

Administrative mandamus is available "for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the . . . board[.]" (Code Civ. Proc., § 1094.5, subd. (a).) "The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of, jurisdiction . . . and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law[.]" (*Id.*, subd. (b).)

This inquiry "includes whether the agency followed the law." (*Friends of Outlet Creek v. Mendocino County Air Quality Management Dist.* (2017) 11 Cal.App.5th 1235, 1244.) "Acting contrary to specific statutory command or applying an incorrect legal standard, is accepted as proof of discretion abused." (*Karuk Tribe of Northern California v. California Regional Water Quality Control Bd., North Coast Region* (2010) 183 Cal.App.4th 330, 363, fn. 25.)

In light of the foregoing, we must hold that the *pre-hearing* exclusion of Dr. Chang by the presiding ALJ cannot be justified by reference to Government Code section 11512, and was statutorily unauthorized. Exclusion contravened the APA's sanction scheme because intermediate statutory mechanisms were not used. Given that those mechanisms were ignored, we cannot recognize leaping to the severe sanction of a key witness

24

being prevented from testifying for Dr. Redko as an implied power of an ALJ's authority under that statute. In these circumstances, the presiding ALJ's ruling qualifies as a prejudicial abuse of discretion, justifying issuance of the writ.

The purported appeal is dismissed. Treating the appeal as a petition for a writ of mandate, the petition is denied. Dr. Redko shall recover his costs.

_____
Kline, P.J.

We concur:


_____
Richman, J.


_____
Miller, J.











*Podiatric Medical Board of California v. Superior Court of San Francisco;*
*Redko, RPI* (A155260)


26

Trial Court:                           San Francisco County Superior Court

Trial Judge:                          Hon. Richard Ulmer, Jr.


Attorneys for Petitioner:          Attorney General of California
Xavier Becerra

Gloria L. Castro
Senior Assistant Attorney General

Jane Zack Simon
Supervising Deputy Attorney General

David M. Carr
Deputy Attorney General

Emily L. Brinkman
Deputy Attorney General

No Appearance for Respondent

Attorney for Real Party in Interest:  Slote, Links & Boreman
Adam G. Slote

27